# Exhibit B

Case 1:23-cv-35691-NGG-PK Document 32-1 Filed 02/21/24 Page 23 of 62 PageID #: 358
A-210
Case 1:19-cv-00005-EK-RLM Document 41-2 Filed 02/28/20 Page 1 of 5 PageID #: 384

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TEMIMA SPETNER, et al.,

                Plaintiffs,

-against-            19-cv-005 (ENV)

PALESTINE INVESTMENT BANK,

                Defendant.

---

## DECLARATION OF MOHAMMAD SAMI AGHBAR

Mohammad Sami Aghbar declares the following pursuant to 28 U.S.C. § 1746:

1. My name is Mohammad Sami Aghbar. I live in Ramallah, Palestine.

2. I have been employed at Palestine Investment Bank ("PIB") for the last 9 years. My current position at PIB is Internal Audit Manager, which I have held since 2010.

3. I submit this Declaration in support of PIB's motion to dismiss the Amended Complaint filed in the above-captioned action on grounds of lack of personal jurisdiction.

4. I am familiar with the facts set forth herein based on my work history and experience at PIB as well as my review of relevant PIB records and publicly available information, and on that basis believe them to be true and correct. Because English is not my native language, I have received assistance from PIB's U.S. legal counsel in the correct English phrasing of some of the concepts discussed in this Declaration. However, all of the facts set forth in this Declaration are true and correct to the best of my knowledge.

5. Palestine Investment Bank P.L.C. was established in Palestine on August 10, 1994, as a public shareholding company. It began its banking operations in March 1995.

6. Today, PIB maintains 20 branches and offices in the West Bank and 1 branch in Gaza, including its head office in Ramallah.

7. At the end of 2016, PIB established a branch outside Palestine, in Manama, Bahrain.

8. PIB is publicly traded and is listed on the Palestine Securities Exchange.

9. As a commercial bank headquartered in Ramallah, Palestine, PIB is regulated by the Palestine Monetary Authority ("PMA"), the regulatory authority for all banks in Palestine.

- 1 -

10. In addition to formulating and implementing monetary and banking policies in Palestine, the PMA performs U.S. Dollar clearing functions for transfers between Palestinian banks, including check clearing, inter-bank transfers, and personal money transfers. Beginning in 1995, all Palestinian banks, including PIB, have been required to participate in the PMA's system for clearing and settling transactions between Palestinian banks.

11. PIB is not now and has never been incorporated, licensed, registered as a foreign corporation, or otherwise authorized to conduct business anywhere in the United States.

12. PIB does not have a branch, office, subsidiary, agency, or other regular place of business anywhere in the United States, nor did PIB have any of these between September 2001 and March 2003, the chronologically "relevant period" in this action (as defined in paragraph 2 of the Amended Complaint).

13. PIB does not own, lease, or occupy any real property in the United States, nor did PIB do so during the relevant period.

14. PIB has no employees, directors, or officers in the United States, nor did PIB have any during the relevant period.

15. During the relevant period, and prior to 2009, PIB did not have a correspondent banking account with any bank in the United States. For dollar-denominated transactions prior to 2009, and during the relevant period, PIB maintained a correspondent banking relationship with Arab Jordan Investment Bank ("AJIB"), which is located in Amman, Jordan, and with Bank Hapoalim, which is located in Tel Aviv, Israel.

16. During the relevant period, and prior to 2009, PIB processed dollar-denominated transactions for its customers in different ways based on the nature of the transaction—none of which involved PIB transferring or clearing dollars through the United States—as explained below.

17. During the relevant period, dollar-denominated transfers from one PIB account-holder to another, such as checks drawn on one PIB account for payment into another PIB account, were cleared and settled on PIB's own books.

18. During the relevant period, dollar-denominated checks and transfers between an account-holder at PIB and an account-holder at another Palestinian bank (or a Palestinian branch of a foreign bank) were settled through the PMA's clearing and settlement system.

19. Through the PMA's clearing system, dollar-denominated transactions among Palestinian commercial banks (like PIB) were set off against one another on a daily basis, leaving each bank with either a net credit owed to it from the other banks, or a net debt owed to the other banks, depending on that day's transactional activity. If a bank owed a net debt to other banks, then it was required to settle that debt by transferring funds in dollars (a "Settlement Transfer") to the account the PMA had designated for this purpose. The PMA would then distribute those funds to the banks to which the debt was owed.

20. During the relevant period, the PMA maintained an account for settling the results of clearing activities at Arab Bank's branch in Ramallah, Palestine. As part of that process, the PMA required all Palestinian banks to send Settlement Transfers to the PMA's designated account at Arab Bank-Ramallah, through the PMA's correspondent account at Arab Bank-New York.

21. PIB had no involvement in the PMA's designation of an account at Arab Bank-Ramallah for receiving Settlement Transfers or the PMA's instruction to route the Settlement Transfers to its account at Arab Bank-New York.

22. In March 2003, the PMA issued a circular to all banks in Palestine, including PIB, appointing Palestine International Bank, an entity established by the PMA and unaffiliated with PIB, as the intermediary between Palestinian commercial banks (like PIB) and the PMA for covering the results of the PMA's dollar clearing operations. As part of that process, the PMA instructed all Palestinian commercial banks to send Settlement Transfers to the PMA's account at Palestine International Bank-Ramallah, through Palestine International Bank's account at Bank of New York. However, this PMA circular did not take effect until April 7, 2003—after the "relevant period" as defined in the Amended Complaint. Therefore, PIB did not send Settlement Transfers through Bank of New York during the relevant period.

23. During the relevant period, dollar-denominated transfers between account-holders at PIB and third parties outside Palestine were not cleared by PIB through any U.S. correspondent bank because, as noted, PIB did not have a correspondent bank account with any bank in the United States prior to 2009. Instead, if a PIB account-holder wanted to send funds to, or receive funds from, a non-PIB account-holder outside Palestine or Israel, then PIB cleared such transactions on an offshore book-to-book basis with either AJIB or Bank Hapoalim, primarily AJIB. The process involving AJIB is described below.

24. To process a dollar-denominated transfer from a PIB account-holder to an individual or entity outside of Palestine (an "outbound transfer") during the relevant period, PIB would debit its account-holder's account in the amount of the transfer and credit AJIB's correspondent account in the same amount. PIB would then send AJIB a credit entry notification and request that AJIB process the outbound transfer to the beneficiary on behalf of PIB's customer.

25. When a bank outside Palestine, on behalf of its customer (the "originator") wanted to send a dollar-denominated transfer to a PIB account-holder (an "inbound transfer") during the relevant period, the originator's bank would send the transfer to AJIB for the benefit of the PIB account-holder. AJIB would then credit PIB's correspondent account in the amount of the transfer, and send a notification to PIB informing PIB of the transfer, and asking PIB to credit its customer's account. PIB would then debit AJIB's correspondent account in the amount of the transfer and credit the funds to its account-holder's account.

26. As is common in correspondent banking, U.S. dollar transfers between PIB and AJIB were settled by way of book entries—that is, credits and debits to the correspondent (or "nostro-vostro") accounts PIB and AJIB each held on the books of the other—rather than by wiring funds between the two banks.

27. During the relevant period, PIB had no direct access to the U.S. banking system and could not send funds directly to or through a U.S. bank because, as noted, PIB did not maintain any correspondent accounts with U.S. banks. In the event that the PMA, another bank, or a customer of PIB instructed PIB to transfer funds to an account at a U.S. bank, PIB would send a transfer to its correspondent bank, AJIB, and request AJIB to transfer the funds on to the U.S. bank. PIB's involvement in any such transaction was entirely outside the United States, and ended when PIB sent funds to AJIB.

28. With respect to both outbound transfers and inbound transfers involving AJIB, PIB did not participate in, direct, or control AJIB's relationships with any other banks (whether in or outside of the United States) that may have been correspondents of AJIB for dollar-denominated business. From PIB's standpoint, all such outbound transfers for, and inbound transfers to, PIB account-holders were accomplished entirely by book-entry transactions between PIB and AJIB.

29. During the relevant period, PIB never controlled how AJIB processed funds to or through the United States. Rather, AJIB made its own decisions about whether it would use its own U.S. correspondent banks, and who those correspondents would be. To the extent PIB instructed AJIB to process a payment to a U.S. bank or bank account, such instruction simply implemented decisions made independently by, and at the express direction of, the PMA, PIB's customer, or the counterparty to the transaction, not by PIB and not as a result of any arrangement or relationship PIB had with any U.S. bank.

30. I have reviewed the statement in paragraph 555 of the Amended Complaint that PIB "*directly* communicated with New York banks in relation to" the settlement of PIB's U.S. dollar-denominated checks. This is not true. During the relevant period, PIB did not communicate directly with New York banks in relation to the settlement of its U.S. dollar-denominated checks. As noted above, any Settlement Transfers sent by PIB were sent through AJIB, and PIB's involvement in the transaction ended with AJIB.

31. I have also reviewed the statements in paragraphs 556 through 561 of the Amended Complaint and the document attached to the Amended Complaint as Exhibit B, which Plaintiffs allege indicates that PIB "wrote to BNY directly on July 20, 2005" regarding a transfer from the PMA to be credited to PIB that had been blocked. First, Exhibit B post-dates the "relevant period" as defined in the Amended Complaint, which, as noted above, ends in March 2003, by more than two years. Second, as noted, the PMA did not begin routing transfers related to its clearing and settlement activity through Bank of New York until April 7, 2003, also after the relevant period.

32. I understand that this Declaration is not intended to waive any of PIB's privileges, immunities, objections, or defenses in this action, including but not limited to jurisdictional objections and defenses, all of which are reserved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Ramallah, Palestine, on the 18th day of November, 2019.

_____
Mohammad Sami Aghbar

- 5 -