KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

July 10, 2025

*Via ECF*

The Honorable Nicholas G. Garaufis
United States District Judge
Room 1426 S
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: Notice of Supplemental Authority
> *Foley et al. v. Lafarge S.A. et al.*, No. 23-cv-05691-NGG (E.D.N.Y.);
> *Finan et al. v. Lafarge S.A. et al.*, No. 22-cv-07831-NGG (E.D.N.Y.);
> *Fields et al. v. Lafarge S.A. et al.*, No. 23-cv-00169-NGG (E.D.N.Y.)

Dear Judge Garaufis:

Plaintiffs write to notify the Court of new authority confirming that the Court should deny Defendants' motion to dismiss (*Foley* Dkt. 73) for lack of personal jurisdiction. *See Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090 (June 20, 2025) (attached as Exhibit 1).

Plaintiffs have explained that the Court has personal jurisdiction under New York's long-arm statute, *Foley* Dkt. 76 at 7-38, and, independently, under Federal Rule of Civil Procedure 4(k)(2), *id*. at 38-40.[1] *Fuld* does not affect the first analysis, and the Court can and should deny Defendants' motion on that basis alone. Indeed, because Defendants purposefully availed themselves of New York's banking system, this Court need not address Rule 4(k)(2) at all. But if it does, *Fuld* substantially simplifies the analysis. Whether or not Defendants' conduct created the "minimum contacts" that constitutional due process used to demand, *Przewozman v. Charity*, 2023 WL 2562537, at *15 (E.D.N.Y. Mar. 17, 2023), their conduct readily satisfies the "more flexible jurisdictional inquiry" the Supreme Court has now adopted. *Fuld*, 145 S. Ct. at 2105.

---

[1] The first basis for jurisdiction rests on Federal Rule of Civil Procedure 4(k)(1)(A) and N.Y. C.P.L.R. § 302(a)(1). *See Foley* Dkt. 89 ¶ 24. Plaintiffs invoke Rule 4(k)(2) jurisdiction in the alternative, *id*., which the Court need address only if it concludes that Defendants are "not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A).

In *Fuld*, the Supreme Court considered whether the traditional "requirement that a defendant have minimum contacts with the forum" restricts the power of federal courts exercising personal jurisdiction under a federal statute. *Id*. at 2103-04. The Court said no. The minimum-contacts test flows from the Fourteenth Amendment – restricting the sovereign authority of state courts (and thus federal courts sitting in diversity) – but does not apply to the "subset of federal cases" in which personal jurisdiction flows from a federal statute. *Id*. at 2102-06. The Fifth Amendment governs the latter and entails "a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id*. at 2105.

*Fuld* applied that principle in upholding the constitutionality of the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"). That statute conferred personal jurisdiction over the Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA") for claims arising under the Antiterrorism Act ("ATA") – the same statute at issue here – so long as those entities "make any payment, directly or indirectly" to family members of deceased terrorists. *Id*. at 2100 (cleaned up). The lower courts had dismissed on personal-jurisdiction grounds by applying the traditional Fourteenth Amendment test – the same test Defendants invoke here. *Compare id*. at 2105, 2109 *with Foley* Dkt. 73 at 27-28 (Defendants asserting that "[t]he personal jurisdiction analysis under Federal Rule of Civil Procedure 4(k)(2) mirrors the traditional federal and state jurisdiction analysis"). But the Supreme Court reversed, clarifying that the Fifth Amendment "does not impose the same jurisdictional limitations" on federal courts "as the Fourteenth" does on state courts. *Fuld*, 145 S. Ct. at 2106. Instead, personal jurisdiction in cases arising under a federal statute – especially those like the ATA that implicate national security – entails a "flexible" inquiry that must give due weight to the political branches' foreign-policy judgments. *Id*. at 2105-07. For the PSJVTA, that inquiry was straightforward. "Congress and the President made a considered judgment to subject the PLO and PA to liability in U.S. courts as part of a comprehensive legal response to halt, deter, and disrupt acts of international terrorism," which was decisive. *Id*. at 2106-07 (cleaned up).

The Court's reasoning is highly instructive. *Fuld* upheld personal jurisdiction over the PLO because "[t]he PSJVTA ties federal jurisdiction to conduct closely related to the United States that implicates important foreign policy concerns." *Id*. In so holding, the Court relied heavily on the policy judgments the ATA embodies, observing that Congress intended the ATA to extend "the same jurisdictional structure that undergirds the reach of American criminal law to the civil remedies that it defines." *Id*. at 2105 (cleaned up). Such parity between criminal and civil jurisdiction mattered because federal courts have long had the power – evident in Lafarge's own guilty plea – to criminally punish "extraterritorial" terrorist acts. *Id.* at 2104-05. For similar reasons, the "Federal Government . . . has a strong interest in permitting American victims of international terror to pursue justice in domestic courts." *Id*. at 2107. Civil jurisdiction over ATA claims against the PLO thus reflected "the political branches' balanced judgment" of those foreign-policy concerns. *Id*. at 2107. Deference to that judgment – not tallying up the PLO's forum contacts – controlled the Fifth Amendment jurisdictional analysis *Fuld* employed.

The same analysis applies here. Plaintiffs assert claims under the same ATA cause of action that *Fuld* considered. As in *Fuld*, Plaintiffs' claims "arise[] under federal law." Fed. R. Civ. P. 4(k)(2). And as in *Fuld*, Defendants engaged in "conduct closely related to the United States that implicates important foreign policy concerns." *Fuld*, 145 S. Ct. at 2106. They conspired with and provided material support to U.S.-designated terrorist groups, knowingly helping those terrorists kill and maim U.S. citizens. *Foley* Dkt. 89 ¶¶ 45-146. No less than in *Fuld*, holding Defendants accountable for that conduct in U.S. courts is "vital" in "furthering the safety of Americans abroad, facilitating compensation for injuries or death, and deterring international terrorism." *Fuld*, 145 S. Ct. at 2107 (cleaned up). Indeed, the ATA authorizes federal courts to hear these claims precisely because companies that "contribute material support or resources, directly or indirectly, to [terrorist groups]" threaten "vital interests of the United States." Pub. L. No. 114-222 §§ 2(a)(1), (6), 130 Stat. 852 (2016) ("JASTA"). Congress found that such terrorist funders "necessarily direct their conduct at the United States" and so "should reasonably anticipate being brought to court in the United States." *Id*. § 2(a)(6).

After *Fuld*, those legislative findings are all the Court needs to exercise jurisdiction over Plaintiffs' ATA claims. That is because the ATA, like the PSJVTA, "ties the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States." *Fuld*, 145 S. Ct. at 2109.[2] After all, Lafarge admitted when pleading guilty that the same terrorist support alleged here, even on more limited jurisdictional facts, supported *criminal* jurisdiction in U.S. courts. *Foley* Dkt. 89 ¶ 147 (citing *United States v. Lafarge S.A.*, No. 22-cr-444-WFK (E.D.N.Y. Oct. 18, 2022), Dkt. 10). If the "same jurisdictional structure" applies in both criminal and civil ATA cases, *Fuld*, 145 S. Ct. at 2105 (cleaned up), there can no longer be any dispute that civil jurisdiction exists. By conspiring with and giving money and cement to terrorists in defiance of federal law, Defendants "direct[ed] their conduct at the United States" and subjected themselves to jurisdiction under Rule 4(k)(2). JASTA § 2(a)(6).

For these reasons and the others discussed in Plaintiffs' briefs, the Court should deny Defendants' motion to dismiss and allow merits discovery to begin. Plaintiffs do not believe that any more briefing is necessary, given how long this case has been pending and that personal jurisdiction remains proper under the traditional Fourteenth Amendment test the parties already fully briefed. But if the Court believes that additional briefing on *Fuld* is needed, Plaintiffs stand ready to provide whatever additional submissions the Court would find most helpful.

---

[2] True, the PSJVTA dealt with "two *sui generis* foreign entities," which the Supreme Court noted were not "run-of-the-mill private defendant[s]." *Fuld*, 145 S. Ct. at 2108. But Lafarge – which committed heinous crimes and knowingly conspired with ISIS – is hardly some run-of-the-mill defendant, either. Congress's considered decision to provide for ATA jurisdiction over such defendants, *see* 18 U.S.C. §§ 2334(a), 2338; JASTA §§ 2(a)(6), 2(b), equally serves the "foreign policy agenda" that led the Supreme Court to uphold jurisdiction in *Fuld*. 145 S. Ct. at 2107-10.

Respectfully submitted,

*s/ Joshua D. Branson*
Joshua D. Branson
*Counsel for Foley Plaintiffs*

Attachment

cc: All Counsel of Record (via ECF)