

JAY K. MUSOFF
Partner

345 Park Avenue
New York, NY  10154

Direct     212.407.4212
Main      212.407.4000
Fax        212.407.4990
jmusoff@loeb.com

**By ECF**

July 17, 2025

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Finan et al. v. Lafarge S.A. et al.*, No. 1:22-cv-07831-NGG-PK (E.D.N.Y.);
       *Fields et al. v. Lafarge S.A. et al.*, No. 1:23-cv-00169-NGG-PK (E.D.N.Y.);
       *Foley et al. v. Lafarge S.A. et al.*, No. 1:23-cv-05691-NGG-PK (E.D.N.Y.)

Dear Judge Garaufis:

On behalf of Defendants Lafarge S.A., Lafarge Cement Holding Limited, and Lafarge Cement Syria S.A. (together, "Defendants") in the above-referenced actions, we write in response to Plaintiffs' July 10, 2025 letter (*Foley* ECF 94, hereinafter "Pl. 7/10 Ltr.") notifying the Court of the United States Supreme Court's decision in *Fuld v. Palestine Liberation Organization*, 145 S. Ct. 2090 (June 20, 2025).  *Fuld* is irrelevant to Defendants' pending supplemental motion to dismiss and does nothing to aid Plaintiffs' efforts to establish personal jurisdiction over Defendants in this case.[1]

The Supreme Court in *Fuld* was presented with a constitutional challenge to a specific statute, namely, the personal jurisdiction provision in the Promoting Security and Justice for Victims of Terrorism Act (PSJVTA), § 903, 133 Stat. 3082–3085, 18 U.S.C. §§ 2333, 2334 ("PSJVTA").  This statute, solely targeted at two entities that "exercise governmental functions," "deems the Palestine Liberation Organization ["PLO"] and the Palestinian Authority ["PA"]—if they engage in specified conduct—to have consented to personal jurisdiction in civil suits brought in the United States under the Antiterrorism Act."  *Fuld*, 145 S. Ct. at 2099, 2108 (citing the PSJVTA).

In *Fuld*, the PLO and PA contended that the PSJVTA's jurisdictional provision, in deeming them to have consented to jurisdiction based on specified jurisdictional predicates, violated the Due Process Clause of the Fifth Amendment.  Rejecting this contention, the Supreme Court held that the statute's narrow, targeted scope "does not transgress" the protections of the Fifth Amendment.

---

[1] As Plaintiffs acknowledge, *Fuld* does not bear upon their primary basis for asserting jurisdiction over Defendants—namely, that Defendants are subject to personal jurisdiction pursuant to New York's long-arm statute, N.Y. CPLR § 302(a), because they executed U.S. dollar transactions through New York correspondent banks.  For the reasons described in Defendants' supplemental motion to dismiss, Plaintiffs have failed to establish personal jurisdiction under New York's long-arm statute.



*Id.* at 2106. The PSJVTA, it held, reflected Congress and the Executive's "considered judgment" that subjecting the PLO and PA to personal jurisdiction in U.S. federal courts for ATA claims serves critical foreign policy interests. *Id.* at 2107.

In reaching this conclusion, the Court declined to "mechanically import the limitations that the Fourteenth Amendment imposes on the authority of *state* courts" to the authority Congress can grant to federal courts as limited by the Due Process Clause of the Fifth Amendment. *Id.* at 2105 (emphasis in original). Yet it stressed that it did not "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. Courts." *Id.* at 2106. Thus, the Court's holding was concerned solely with the specific jurisdiction-granting features of the PSJVTA. Indeed, an essential basis for the Court's conclusion was that the PSJVTA was tailored in nature, applying only to the PLO and PA—"two enumerated nonsovereign foreign entities, both of which have been subject to a series of congressional enactments aimed at deterring terrorism and accomplishing other foreign relations objectives." *Id.* at 2108.

Given that the PSJVTA is explicitly limited to the PLO and PA, the Supreme Court's decision in *Fuld* is irrelevant to whether Defendants in this case—private-sector French, Syrian and Cypriot companies—are subject to this Court's jurisdiction under those ordinary standards. Standing alone, this should preclude any attempts to compare this case with *Fuld*. Nevertheless, Plaintiffs now attempt to read *Fuld* as allowing them to rewrite the jurisdictional standards applicable to Defendants. Drawing upon the "legislative findings" accompanying the Justice Against Sponsors of Terrorism Act ("JASTA"), they now claim that these supply "all the Court needs to exercise jurisdiction over Plaintiffs' ATA Claims." (Pl. 7/10 Ltr.at 3.) Nothing within the text of JASTA or the ATA supports this contention, much less suggests that a JASTA/ATA defendant—that is, a private-sector defendant accused of primary or secondary civil liability under the ATA—is subject to the kind of legislative override found in PSJVTA created with two specific entities in mind. On this extreme view, federal courts could hale *any* foreign defendant into U.S. courts based solely on allegations of an ATA violation, irrespective of due process, international comity or the ordinary rules of long-arm jurisdiction. *Fuld* does not suggest such a sweeping position.

*First*, the Supreme Court in *Fuld* embraced a limited holding that specifically rejected Plaintiffs' position that JASTA should be read to subject *any* ATA defendant to personal jurisdiction in the United States. Indeed, *Fuld* explicitly declined to adopt Plaintiffs' "unbounded jurisdictional theory" under the Fifth Amendment. *Id.* at 2106.[2] The Supreme Court was "wary to reach further and bless more attenuated assertions of jurisdiction" outside the limited and specific jurisdictional grant against the PLO and PA contained in the PSJVTA. *Id.* Nor did the Court purport to decide "the Fifth Amendment's outer limits on the territorial jurisdiction of federal courts," instead only holding that "the PSJVTA does not transgress them." *Id.* In limiting its holding to the PSJVTA, the Court declined to "second guess why Congress did not use a blunter remedial tool to achieve its desired foreign policy ends." *Id.* at 2108. Plaintiffs now propose that this Court engraft the "blunter remedial tool" onto JASTA, against the considered judgment of the Federal Government to take a "narrower tack." *Id.* This Court should decline that invitation.

---

[2] As noted in the Government's *amicus* brief in *Fuld* (as discussed by the Supreme Court), Plaintiffs' "maximalist theory of federal jurisdiction" has little support as a "historical matter" and raises the policy concern that "other nations might respond in kind by haling Americans into their courts under expansive theories of jurisdiction." *Id.* at 2106.



*Second*, *Fuld* addressed only the constitutionality of the PSJVTA and whether the political branches may extend personal jurisdiction over the PLO and PA by statute. In answering yes, the Court relied extensively on the fact that, in enacting PSJVTA, "the Executive and Congress have spoken with one voice" and rendered a "considered judgment to subject the PLO and PA to liability in U.S. Courts. *Fuld*, 145 S. Ct. at 2107 (citing *Youngstown Sheet & Tube Co v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)). Of course, Defendants here are not the PLO or PA and not subject to the PSJVTA by its terms. Nor are they the subject of an equivalent jurisdiction-granting statute that reflects the Executive and Congress' "considered judgment" to target them for jurisdiction.

*Third*, Plaintiffs ignore the *sui generis* status of the PLO and PA, which is intrinsic to the PSJVTA and essential to *Fuld*'s holding. Unlike "just any run-of-the-mill private defendant," the PLO and PA have been "subject to a series of congressional enactments aimed at deterring terrorism and accomplishing other foreign relations objectives." *Id.* at 2108. And the PLO and PA "have litigated ATA suits here for decades and in the PSJVTA were put on clear notice—far more than most defendants in the mine-run of litigation—that continuing to engage in certain specified conduct would open them up to potential federal court jurisdiction." *Id.* at 2110. Defendants here have no equivalent history with the U.S. Government and were not given notice that they could be subject to personal jurisdiction in U.S. Courts without the due process guardrails afforded all foreign defendants.

Finally, *Fuld* involved Rule 4(k)(1)(c), which permits jurisdiction where it is specifically "authorized by a federal statute." By contrast, as Plaintiffs expressly indicate in their complaints, their claim of personal jurisdiction over Defendants is based upon Federal Rule of Civil Procedure 4(k)(2). (*See, e.g., Foley* ECF 89 at ¶ 24.) Rule 4(k)(2) applies where, as here, there is no specific federal statutory provision governing personal jurisdiction over the subject lawsuit. Thus, *Fuld* does not disturb the jurisdictional inquiry at issue under Rule 4(k)(2), as interpreted by controlling Second Circuit precedent: whether the defendant had sufficient "affiliating contacts with the United States in general." *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008); *see also* Fed. R. Civ. P. 4(k)(2) Advisory Comm. Note (1993) (requiring "affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party").

As explained in Defendants' briefing, Plaintiffs have failed to establish that this Court may exercise personal jurisdiction over Defendants under any theory. *Fuld* does not change this conclusion and the Court should grant Defendants' motion to dismiss. Defendants are prepared to provide additional briefing on the inapplicability of the *Fuld* decision if the Court would find such submissions helpful.

Sincerely,

Jay K. Musoff

cc:   Counsel of Record (by ECF)