**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

CHARISS FINAN, *et al.*,

               Plaintiffs,

                 v.

LAFARGE S.A., *et al.*,

               Defendants.

22-cv-07831 (NGG) (PK)

-------------------------------------------------------- x

TAMARA FIELDS, *et al.*,

               Plaintiffs,

                 v.

LAFARGE S.A., *et al.*,

               Defendants.

23-cv-00169 (NGG) (PK)

-------------------------------------------------------- x

DIANE FOLEY, *et al.*,

               Plaintiffs,

                 v.

LAFARGE S.A., *et al.*,

               Defendants.

23-cv-05691 (NGG) (PK)

-------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY THE
<u>AUGUST 29, 2025 ORDER FOR INTERLOCUTORY APPEAL</u>**

Jay K. Musoff
John Piskora
Chloe Gordils
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone:    212-407-4212
Facsimile:    212-407-4990

*Attorneys for Lafarge S.A.,
Lafarge Cement Holding Limited, and
Lafarge Cement Syria S.A.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................. iv

PRELIMINARY STATEMENT............................................................................................1

BACKGROUND ....................................................................................................................3

A.    Relevant Allegations in the Amended Complaints. ...............................................3

B.    The Parties' Supplemental Authority Letter Briefing on *Fuld*.............................4

C.    The Court's Order Granting in Part and Denying in Part Defendants' Motions to Dismiss.....................................................................................................................4

ARGUMENT ..........................................................................................................................5

I.    THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW. ............................5

II.   THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE CONTROLLING QUESTIONS OF LAW..................................................................6

      A.    There Is a Substantial Ground for Difference of Opinion on the *Fuld* Question. ........................................................................................................7

      B.    There Is a Substantial Ground for Difference of Opinion on the Conspiracy Standard Question. ...........................................................................................12

III.  AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION.......................................................................14

IV.   THE COURT SHOULD EXERCISE ITS DISCRETION TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL. ............................................................................14

CONCLUSION.....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

### CASES

*Allstate Insurance Co. v. Elzanaty*,
 No. 11-CV-3862 (ADS)(ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013) ..........13, 15

*Batalla Vidal v. Nielsen*,
 No. 16-CV-4756 (NGG) (JO), 17-CV-5228 (NGG) (JO), 2018 WL 10127043
 (E.D.N.Y. Apr. 30, 2018) ........................................................................................ *passim*

*In re Fairfield Sentry Ltd.*,
 No. 10-13164 (JPM), 2025 WL 2203142 (Bankr. S.D.N.Y. Aug. 1, 2025) ......................11

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
 No. 13 Civ. 5784 (CM), 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ...................... *passim*

*Freeman v. HSBC Holdings PLC*,
 57 F.4th 66 (2d Cir. 2023) ..................................................................................1, 2, 12, 13

*Fuld v. Palestine Liberation Org.*,
 606 U.S. 1 (2025).................................................................................................... *passim*

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
 Amministrazione Straordinaria*,
 921 F.2d 21 (2d Cir. 1990) ......................................................................................6

*Porina v. Marward Shipping Co.*,
 521 F.3d 122 (2d Cir. 2008) ..................................................................................10

*Republic of Colombia v. Diageo North American Inc.*,
 619 F. Supp. 2d 7 (E.D.N.Y. 2007) ...................................................................5, 6, 11, 14

*SEC v. Coinbase, Inc.*,
 761 F. Supp. 3d 702 (S.D.N.Y. 2025) .......................................................................5, 6

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
 521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...............................................................10, 11, 13

*United States v. Khalupsky*,
 5 F.4th 279 (2d Cir. 2021) ..............................................................................1, 3, 12, 13

*Waldman v. Palestine Liberation Org.*,
 835 F.3d 317 (2d Cir. 2016) ..................................................................................10

iv

*Weinstock v. Islamic Republic of Iran*, No. 23 C,
2824, 2025 WL 2257076 (N.D. Ill. Aug. 7, 2025) .......................................................... 11

## STATUTES

18 U.S.C. § 2333 ......................................................................................................... 3

18 U.S.C. § 2334 ......................................................................................................... 7

28 U.S.C. § 1292 .................................................................................................. *passim*

## RULES

Fed. R. Civ. P. 4 ......................................................................................................... 11

Defendants Lafarge S.A., Lafarge Cement Holding Limited, and Lafarge Cement Syria S.A. respectfully submit this memorandum of law in support of their motion to certify the Court's August 29, 2025 Memorandum & Order (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

As outlined in their contemporaneously filed motion to reconsider, Defendants respectfully submit that the Court should reconsider its holdings in the Order that (i) the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), and (ii) Plaintiffs stated claims for conspiracy under the Antiterrorism Act (the "ATA"). In the alternative, and as further explained below, the Court should certify the Order for interlocutory appeal to the U.S. Court of Appeals for the Second Circuit under 28 U.S.C. § 1292(b). Both the personal jurisdiction and conspiracy holdings satisfy the statutory criteria for certification, and discretionary considerations counsel strongly in favor of permitting an immediate appeal of the Order.

*First*, the Court's rulings on personal jurisdiction and Plaintiffs' conspiracy claims present controlling questions of law under applicable legal standards:

- Whether *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025), supports the exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) whenever the plaintiff's claims "implicate important foreign policy and national security concerns," thereby overruling long-standing Second Circuit precedent requiring an assessment of the defendant's contacts with the United States (the "*Fuld* Question").

- Whether courts in the Second Circuit should apply the "common pursuit" standard set forth in *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023), or the "not at cross-purposes" framework set forth in *United States v. Khalupsky*, 5 F.4th 279 (2d Cir. 2021), when assessing whether a plaintiff has plausibly alleged a shared co-conspiratorial purpose when asserting an ATA conspiracy claim (the "Conspiracy Standard Question").

1

The resolution of either issue in Defendants' favor would terminate these three actions (as well as the five related actions pending against Defendants).

***Second***, there is a substantial ground for difference of opinion. As to the *Fuld* Question, Defendants respectfully submit that the Court misapplied the Supreme Court's recent ruling. In *Fuld*, the Supreme Court upheld the exercise of personal jurisdiction under Rule 4(k)(1) over two "*sui generis* foreign entities" for defined predicate conduct pursuant to a single-purpose statute that identifies those entities "by name" and states that they "'shall be deemed to have consented to personal jurisdiction.'" 606 U.S. at 8, 22 (quoting 18 U.S.C. §§ 2334(e)(1), (5)). Here, in sharp contrast, no statute authorizes the assertion of personal jurisdiction over Defendants, which are private corporations that lack the types of long-standing ties with the United States necessary to sustain jurisdiction. Even if the Court adheres to its contrary holding, the application of *Fuld*'s Rule 4(k)(1) rationale to Rule 4(k)(2) is a matter of first impression for which courts could have differing opinions. Moreover, the Second Circuit has long held that evaluating personal jurisdiction under Rule 4(k)(2) requires assessing a defendant's contacts with the United States in the aggregate. By displacing this framework with one that considers only whether claims "implicate important foreign policy and national security concerns," the Order effects a sea change in long-settled principles and compels finding personal jurisdiction over any foreign defendant in any ATA action. An immediate appeal is necessary so that the Second Circuit can measure the reach of *Fuld* and reconcile that decision with its precedent construing Rule 4(k)(2).

Separately, the Conspiracy Standard Question gives rise to a substantial ground for difference of opinion. The Court did not require that Plaintiffs plausibly allege that the supposed co-conspirators were "pursuing the same object" to state a claim for ATA conspiracy, *Freeman*, 57 F.4th at 79, instead applying a more permissive standard from an earlier Second Circuit decision

2

construing *criminal* conspiracy, *Khalupsky*, 5 F.4th at 289.  While Defendants respectfully submit that the Court's ruling conflicted with controlling Second Circuit precedent, at a minimum the Order creates a novel conflict between two Second Circuit cases that would benefit from immediate appellate review.

*Third*, certification of an interlocutory appeal of the Order would materially advance the ultimate termination of this litigation.  As noted above, a reversal of either the personal jurisdiction ruling or the conspiracy ruling would result in the complete dismissal of these three actions (and five other pending suits against Defendants).

*Finally*, the Court should exercise its discretion to certify the Order for immediate appeal. An interlocutory appeal is the most efficient means of advancing this litigation, could limit otherwise costly and burdensome discovery, and will provide guidance to similarly situated parties involved in ATA cases in this Circuit.

Accordingly, and as further explained below, the Court should certify the Order for an interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

### A.    Relevant Allegations in the Amended Complaints.

In each action, Plaintiffs sued Defendants for violating the ATA's secondary liability provisions.  *See* 18 U.S.C. § 2333(d).  As relevant here, Plaintiffs asserted conspiracy claims, alleging conspiracies between Defendants and FTOs (i) to provide material support, (ii) to maintain ISIS's territorial control of Syria and Iraq, and/or (iii) to bring about acts of international terrorism against Americans.  (*Foley*, ECF No. 68 ¶¶ 415–32; *Fields*, ECF No. 55 ¶¶ 421–30; *Finan*, ECF No. 70 ¶¶ 409–18.)

Defendants are foreign, private-sector companies domiciled in France, Cyprus, and Syria. (*Foley*, ¶¶ 12–14; *Fields*, ¶¶ 45–49; *Finan*, ¶¶ 30–32.)  Plaintiffs alleged that Defendants were

subject to personal jurisdiction pursuant to either the New York long-arm statute, CPLR § 302(a)(1), or the federal long-arm rule, Rule 4(k)(2).  (*Foley*, ¶ 24; *Fields*, ¶ 61; *Finan*, ¶ 44.) For Rule 4(k)(2), Plaintiffs alleged personal jurisdiction "based on Defendants' use of New York banks and U.S.-based email service providers in carrying out their scheme."  (*Id.*)

Defendants moved to dismiss Plaintiffs' Complaints for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).  (*Foley*, ECF No. 25, 73; *Fields*, ECF No. 26, 60; *Finan*, ECF No. 40, 75.)

**B.     The Parties' Supplemental Authority Letter Briefing on *Fuld*.**

While Defendants' motions to dismiss were pending, the Supreme Court issued its opinion in *Fuld*.  On July 10, 2025, Plaintiffs filed a joint notice of supplemental authority, arguing that *Fuld* permitted the Court to exercise jurisdiction over Defendants because ATA claims implicate "important foreign policy concerns."  (*Foley*, ECF No. 94.)  Defendants submitted a response letter on July 17, 2025, explaining that *Fuld*'s narrow holding did not apply to ATA claims against private foreign defendants and did not disturb the Second Circuit's jurisdictional inquiry under Rule 4(k)(2).  (*Foley*, ECF No. 95.)  Given the constraints of supplemental letter briefing, Defendants also offered to submit "additional briefing on the inapplicability of the *Fuld* decision."  (*Id.*)

**C.     The Court's Order Granting in Part and Denying in Part Defendants' Motions to Dismiss.**

On August 29, 2025, the Court issued the Order granting in part and denying in part Defendants' motions to dismiss.  (Order at 1.)  Although the Court declined to exercise jurisdiction under CPLR § 302(a), it held that Defendants were subject to personal jurisdiction pursuant to Rule 4(k)(2).  Relying on *Fuld* alone, the Court held that "because Plaintiffs['] claims 'arise under federal law' and implicate important foreign policy and national security concerns, this Court's

exercise of personal jurisdiction over Defendants is consistent with the United States Constitution and laws." (*Id.* at 36–37.)

The Court dismissed Plaintiffs' aiding-and-abetting claims. (*Id.* at 43.) It held that Plaintiffs had stated claims for conspiracy because Defendants' alleged "interest in maintaining their cement operations in Syria and excluding competitors from the local market" converged with an FTO's "purpose of building and maintain a geographic stronghold, or 'caliphate.'" (*Id.* at 48.)

## **ARGUMENT**

A court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) "where (1) the decision to be appealed 'involves a controlling question of law,' (2) 'as to which there is a substantial ground for a difference of opinion,' and (3) 'an immediate appeal may materially advance the ultimate determination of the litigation.'" *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007) (Garaufis, J.) (quoting 28 U.S.C. § 1292(b)). If the three statutory criteria are met, "[t]he question becomes whether th[e] court should exercise its discretion to permit an immediate appeal." *Id.* at 11. "Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *Id.* at 9.

## I.    THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW.

As a threshold matter, both the *Fuld* Question and the Conspiracy Standard Question are "controlling question[s] of law." 28 U.S.C. § 1292(b). "The term 'question of law' 'refer[s] to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 713 (S.D.N.Y. 2025) (alteration in original) (citation omitted). Both issues here fit the bill. The Court's holding on personal jurisdiction hinged on its interpretation of *Fuld* and Rule 4(k)(2) and did not require the resolution

5

of any factual questions. And the Second Circuit has "granted certification when the order involved issues of in personam . . . jurisdiction." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). As for Plaintiffs' conspiracy claims, the identification of the proper standard for assessing co-conspirators' alleged purposes—*i.e.*, whether a complaint must allege that the co-conspirators were "pursuing the same object," or whether an allegation of goals "not at cross-purposes" suffices—presents a "pure question of law" that the Second Circuit could resolve "without having to study the record." *Coinbase*, 761 F. Supp. 3d at 713 (citation omitted).

Both questions are also "controlling" under § 1292(b). "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. Such is the case here. Reversal of this Court's ruling on personal jurisdiction would compel the dismissal of all of Plaintiffs' claims against Defendants, thereby terminating these related actions (along with the five similar actions pending against Defendants). Separately, because Plaintiffs' conspiracy claims are the only ones that survived dismissal, a reversal of that part of the Order likewise would lead to dismissal of these actions for failure to state any claims.

## II.    THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE CONTROLLING QUESTIONS OF LAW.

Turning to the next statutory prong, "there is a substantial ground for difference of opinion" on both controlling questions of law. 28 U.S.C. § 1292(b). "An order furnishes 'substantial ground for difference of opinion' when it presents issues that are 'difficult and of first impression,'" *Batalla Vidal v. Nielsen*, Nos. 16-CV-4756 (NGG) (JO), 17-CV-5228 (NGG) (JO), 2018 WL 10127043, at *2 (E.D.N.Y. Apr. 30, 2018) (Garaufis, J.) (citation omitted); *accord Diageo*, 619 F. Supp. 2d at 11 ("[T]his element is satisfied where the 'issues are difficult and of first impression.'"), or when "the answer[s]" to the controlling questions of law are "less than

6

straightforward, and warrant[] a close look by a controlling court," *Flo & Eddie, Inc. v. Sirius XM
Radio Inc.*, No. 13 Civ. 5784 (CM), 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015).

### A.    There Is a Substantial Ground for Difference of Opinion on the *Fuld* Question.

In the Order, the Court relied exclusively on the Supreme Court's very recent decision in
*Fuld* and held that "Rule 4(k)(2) provides a proper basis for this court's exercise of personal
jurisdiction over Defendants."  (Order at 36.)  The Court explained that personal jurisdiction over
foreign defendants lies under Rule 4(k)(2) whenever a federal law claim "implicate[s] important
foreign policy and national security concerns."  (*Id.* at 36–37.)  The Court held that the ATA
provides such a claim—a holding that reaches significantly beyond the reasoning of *Fuld* and that
would permit the Court's exercise of personal jurisdiction over foreign defendants without further
analysis or exception in any ATA case.  (*See id.*)

As an initial matter, Defendants respectfully submit that the Court misinterpreted *Fuld*'s
narrow holding and improperly extended that ruling to assertions of personal jurisdiction under
Rule 4(k)(2).  The Supreme Court in *Fuld* considered whether a statute at issue there (but not in
this case), the Promoting Security and Justice for Victims of Terrorism Act (the "PSJVTA"),
enacted in 2019, "authorized" personal jurisdiction over the Palestinian Authority (the "PA") and
the Palestine Liberation Organization (the "PLO") under Rule 4(k)(1).  The PSJVTA expressly and
by name permits the assertion of personal jurisdiction over the PA and the PLO based on their
continuing (i) payments to individuals who committed acts of terrorism that injured U.S. nationals,
or (ii) maintenance of U.S. offices or activities in the United States.  *See* 18 U.S.C. § 2334(e).  The
Supreme Court emphasized that these "jurisdiction triggering predicates" "tie[] jurisdiction to
specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in
[the PA's and the PLO's] relationships with the United States." *Fuld*, 606 U.S. at 21.  The Supreme

7

Court held that these particular "jurisdiction triggering predicates" authorized personal jurisdiction under Rule 4(k)(1) in a way that "comports with the Due Process Clause of the Fifth Amendment." *Id.* at 21, 25.

To bolster its ruling, the Supreme Court highlighted the restrictiveness of the PSJVTA and the protections afforded to defendants. The statute "reflects the political branches' balanced judgment of competing concerns" related to "entities with which the Federal Government has complex, longstanding relationships in which concerns over terrorism have long been at the fore." *Id.* at 20. "Far from haling just any run-of-the-mill private defendant into American courts, the PSJVTA represents but one targeted aspect of a multifaceted foreign policy toward these two *sui generis* foreign entities, both of which exercise governmental functions in a geopolitically sensitive region and have decades of 'meaningful contacts, ties, [and] relations' with the United States." *Id.* at 22 (alteration in original) (citation omitted). And "the statute's targeted applicability put the PLO and PA on full notice that they could be subject 'to personal jurisdiction' in ATA suits in U.S. courts." *Id.* (citation omitted). The Supreme Court also underlined Congress's intent to authorize the assertion of personal jurisdiction ***only*** over the PLO and PA, as opposed to all other persons who might be subject to liability under the ATA more broadly. The ***"supposed underinclusiveness"*** of the statute—that it ***"applies to [the PLO and PA], but not any 'other terrorist group or state-sponsor of terrorism'"***—"only serves to reinforce that the statute reflects 'delicate judgments' on matters of foreign policy that are in 'the prerogative of the political branches to make.'" *Id.* (emphasis added) (citations omitted). "Rather than subject to jurisdiction in its courts a broader range of potential defendants—each of which presumably would implicate distinct foreign affairs concerns—***the Federal Government took a narrower tack.***" *Id.* (emphasis added).

8

The Supreme Court's tightly cabined decision in *Fuld* does not support this Court's exercise of personal jurisdiction over Defendants.  For one thing, the Supreme Court considered the Fifth Amendment's constraints on personal jurisdiction "when authorized by federal statute" under Rule 4(k)(1).  It was in this context, with respect to "jurisdiction triggering predicates" not otherwise found in the ATA, that the Supreme Court deferred to "the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of national security and foreign affairs' and fairness to [the PA and the PLO]."  *Id.* at 20–21 (citation omitted).  This case does not involve Rule 4(k)(1) or any "jurisdiction triggering predicates," and the Supreme Court did not address the separate due process limitations under Rule 4(k)(2).

For another, none of the protective features of the PSJVTA that contributed to the Supreme Court's decision is present here.  There are no "narrow" "jurisdiction triggering predicates" in this case.  Nor should a Congress that felt the need expressly to extend personal jurisdiction to the PA and the PLO via separate statute be deemed to have done the same to Defendants *sub silentio* through the previously enacted ATA (and JASTA).  After all, if the ATA (as supplemented by JASTA) granted federal courts the authority to exercise personal jurisdiction over any foreign defendant—as this Court concluded in the Order—there would have been no need for the PSJVTA. Instead, the Order permits the exercise of personal jurisdiction over any foreign person named as a defendant in an ATA claim—perilously close to an "anything-goes approach" that *Fuld* expressly discouraged.  *See id.* at 21.  Defendants do not have "decades of 'meaningful contacts, ties, [and] relations' with the United States."  *Id.* at 22 (alteration in original) (citation omitted).  And Defendants were not on "full notice that they could be subject 'to personal jurisdiction' in ATA suits in U.S. courts" as a result of any statute's "targeted applicability."  *Id.*

9

Even if this Court does not reconsider its jurisdictional ruling (as it is respectfully submitted it should), the marked distinctions between *Fuld* and this case mandate the conclusion that "there is substantial ground for difference of opinion" on the *Fuld* Question. *See, e.g.*, *Battala Vidal*, 2018 WL 10127043, at *2 ("That the court finds these arguments ultimately unpersuasive does not mean that there is not substantial ground for disagreement on this issue."); *Flo & Eddie, Inc.*, 2015 WL 585641, at *2 (certifying immediate appeal and explaining that "while this Court believes it reached the correct result, I appreciate that another judge might feel differently").

At a minimum, the *Fuld* Question "presents issues that are 'difficult and of first impression.'" *See Batalla Vidal*, 2018 WL 101247043, at *2 (citation omitted). Indeed, that the Fifth Amendment "does not impose the same jurisdictional limitations as the Fourteenth" was a novel holding. *Fuld*, 606 U.S. at 18. Prior to *Fuld*—issued less than three months ago—the Supreme Court had "expressly reserved 'the question whether the *Fifth* Amendment imposes the same restrictions [as the Fourteenth Amendment] on the exercise of personal jurisdiction by a *federal* court.'" *Id.* at 11 (citation omitted). And the Second Circuit, for its part, had adhered to "precedents [that] clearly establish the congruence of due process analysis under both the Fourteenth and Fifth Amendments." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016). With respect to Rule 4(k)(2) in particular, "the question" historically has been "whether [the defendant] has sufficient affiliating contacts with the United States in general." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). The Supreme Court in *Fuld* did not purport to modify or otherwise pass judgment on that standard. *See* 606 U.S. at 18 ("Although we hold today that the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth, we do not purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts.").

10

This Court is the first to apply *Fuld*, and independent Fifth Amendment restrictions on the exercise of personal jurisdiction, to Rule 4(k)(2). When considered alongside the complexity of the issues, this alone justifies finding a substantial ground for difference of opinion. *See, e.g.*, *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 278 (E.D.N.Y. 2021) (granting certification where "the only cases on [the relevant] issue in the Second Circuit involve the instant action and . . . substantial difference of opinion may exist as to the statute's interpretation"); *Batalla Vidal*, 2018 WL 10127043, at *2 (granting certification where, among other things, the issue "has not been squarely addressed by the Second Circuit"); *Flo & Eddie, Inc.*, 2015 WL 585641, at *2 (granting certification in light of the "complicated history" of the issues, which "makes the answer to this question less than straightforward, and warrants a close look by a controlling court"); *Diageo*, 619 F. Supp. 2d at 11 (granting certification where there were "so few decisions considering [the relevant] doctrines" and this Court "was required to consider . . . questions of first impression" and "address significant legal and policy concerns"). And, indeed, lower courts have begun to acknowledge the open questions following *Fuld*. *See, e.g.*, *In re Fairfield Sentry Ltd.*, No. 10-13164 (JPM), 2025 WL 2203142, at *7 (Bankr. S.D.N.Y. Aug. 1, 2025) ("[T]he effect of the Supreme Court's ruling in *Fuld* in cases that do not involve a specific statutory conferral of personal jurisdiction will be developed over time."); *Weinstock v. Islamic Republic of Iran*, No. 23 C 2824, 2025 WL 2257076, at *11 (N.D. Ill. Aug. 7, 2025) ("[I]t is not clear whether this national-minimum-contacts requirement [under Rule 4(k)(2)] remains post-*Fuld*, or whether *Fuld* changes the nature of what a national contact entails.").

What's more, the "outcome" of the *Fuld* Question "has broad-reaching ramifications" for similarly situated litigants, which further counsels in favor of finding a substantial ground for difference of opinion. *Quartararo*, 521 F. Supp. 3d at 278. The Court's analysis all but forecloses

motions to dismiss ATA claims for lack of personal jurisdiction.  In the event that a defendant lacks sufficient contacts with a "court of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(k)(1)(A), the Order compels the conclusion that "exercising jurisdiction" over a foreign defendant under the ATA nonetheless "is consistent with the United States Constitution and laws," Fed. R. Civ. P. 4(k)(2)(B).  Such a determination upends more than a decade of precedent in this and other Circuits, in which courts have routinely dismissed ATA claims for lack of personal jurisdiction.  In fact, litigants in this Circuit—in ATA cases and beyond—have begun contesting the implications of *Fuld*, which will, in turn, require courts to grapple with these complicated issues in the near-term.[1]  Clarity from the Second Circuit would conserve resources and provide stability and predictability.

## B.    There Is a Substantial Ground for Difference of Opinion on the Conspiracy Standard Question.

While Defendants respectfully submit that the Court should reconsider its ruling that Plaintiffs stated claims for conspiracy under the ATA, in the alternative, there is a substantial ground for difference of opinion on the Conspiracy Standard Question as well.

The Second Circuit has held that an ATA conspiracy claim must "allege that the coconspirators were 'pursuing the same object.'"  *Freeman*, 57 F.4th at 79 (citation omitted).  In *Freeman*, the Second Circuit concluded that the plaintiffs had failed to state a conspiracy claim because the complaint alleged mismatched objectives between the bank defendants, which were "evad[ing] U.S. sanctions," and the FTOs, which were "intend[ing] to kill or injure U.S. service members in Iraq."  *Id.* at 80.  Given the "absence of any allegations that the Banks and terrorist

---

[1]    *See, e.g.*, *Zobay v. MTN Grp. Ltd.*, No. 1:21-cv-03503, ECF Nos. 230, 239 (E.D.N.Y.); *Troell v. Binance Holdings Ltd.*, No. 1:24-cv-7136, ECF Nos. 111, 123, 128 (S.D.N.Y.); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-cv-00744, ECF Nos. 175, 177 (S.D.N.Y.).

12

groups 'engaged in a common pursuit,'" the Second Circuit found no "agreement that could form the basis of a JASTA conspiracy between the Banks and the terrorist groups." *Id.*(citation omitted).

Here, the Court elected not to apply the *Freeman* standard when assessing the conspiracy allegations in the Amended Complaints. The Court relied, instead, on the formulation in an older Second Circuit case, *Khalupsky*, pursuant to which "[c]o-conspirators' goals need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes.'" (Order at 48 (citation omitted).) It then concluded that Defendants' alleged "interest in maintaining their cement operations in Syria and excluding competitors from the local market . . . converged with ISIS's purpose of building and maintain a geographic stronghold, or 'caliphate,' from which it could plan terrorist attacks on Americans across the world." (*Id.*) The Court found these allegations sufficient to state a conspiracy claim. (*Id.* at 48–50.)

Whether the criminal "not at cross-purposes" framework from *Khalupsky* trumps the civil "common pursuit" standard from *Freeman*—which was more recently decided and assessed an ATA conspiracy claim—"warrants a close look by a controlling court," *Flo & Eddie, Inc.*, 2015 WL 585641, at *2. This Court was the first to confront the interplay between *Freeman* and *Khalupsky*, and the novelty of the Court's opinion—and its conflict with the clear language in *Freeman*—supports a finding that "substantial difference of opinion may exist." *See Quartararo*, 521 F. Supp. 3d at 278. The downstream consequences of the Order, which could sow confusion in the standards governing ATA conspiracy claims in pending and future cases, bolsters the case for certification. *See, e.g.*, *id.* at 278 (emphasizing the "broad-reaching ramifications" of the resolution of a controlling question of law).

13

## III.    AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION.

The final Section 1292(b) factor is satisfied because "an immediate appeal from" the Order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Allstate Ins. Co. v. Elzanaty*, No. 11-CV-3862 (ADS) (ARL), 2013 WL 2154759, at *4 (E.D.N.Y. May 16, 2013).

As explained above, *see supra* pp. 5–6, resolution of either the *Fuld* Question or the Conspiracy Standard Question in Defendants' favor would compel the dismissal of these three related actions (along with five additional actions). Accordingly, "permitting an interlocutory appeal will expedite this litigation" and potentially curtail the need to conduct "extensive and costly discovery involving multiple parties and third-parties in the United States and abroad." *Diageo*, 619 F. Supp. 2d at 11; *see also*, *e.g.*, *Batalla Vidal*, 2018 WL 10127043, at *3 (finding third factor satisfied where appellate reversal "would likely result in the dismissal" of some of the plaintiffs' claims "and the concomitant narrowing of discovery").

## IV.    THE COURT SHOULD EXERCISE ITS DISCRETION TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL.

Finally, with "[t]he three elements of Section 1292(b) certification . . . satisfied," the Court should "exercise its discretion to permit an immediate appeal." *Diageo*, 619 F. Supp. 2d at 11. As in *Diageo*, "[a]n interlocutory appeal is appropriate in this case because it is the most efficient means of advancing or disposing of the litigation." *Id.* The Second Circuit can address the *Fuld* Question or the Conspiracy Standard Question "without regard to the factual and legal theories that may be advanced at later stages of the litigation." *Id.* at 12. Prompt appellate consideration

14

is all the more warranted because "Plaintiffs' claims may fail" on multiple bases "and the costs of discovery will be significant." *See Id.* at 13.

At the same time, an immediate appeal will resolve a fundamental and novel threshold question concerning personal jurisdiction in all ATA cases involving foreign defendants. As noted above, *see supra* pp. 11–12 & n.1, courts and litigants have already started to wrestle with the implications of *Fuld* for assertions of personal jurisdiction under Rule 4(k)(2) in ATA cases and beyond. The Order was the first decision to apply *Fuld* in this context. And it was the first to conclude that the Supreme Court's analysis applies with full force to Rule 4(k)(2) and permits the exercise of personal jurisdiction over any foreign defendant in an ATA case. Consequently, the Order "involves a new legal question [and] is of special consequence." *Batalla Vidal*, 2018 WL 10127043, at *4 (alteration in original) (citation omitted). "[I]t will be of significant value for the parties here, and others similarly situated, to have a dispositive answer to this question" from the Second Circuit. *See Allstate*, 2013 WL 2154759, at *5. For similar reasons, the Court's novel interpretation of the shared-purpose requirement in ATA conspiracy cases, and its conclusion that *Khalupsky* trumps *Freeman*, justifies an immediate appeal. *See supra* pp. 12–13.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to certify the Court's August 29, 2025 Order for interlocutory appeal.

Dated: New York, New York
      September 12, 2025

    /s/ *Jay K. Musoff*

Jay K. Musoff
John Piskora
Chloe Gordils
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone:    212-407-4212
Facsimile:    212-407-4990

*Attorneys for Lafarge S.A.,*
*Lafarge Cement Holding Limited, and*
*Lafarge Cement Syria S.A.*

16