UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x
CHARISS FINAN, *et al.*,

       Plaintiffs,

       v.

LAFARGE S.A., *et al.*,

       Defendants.

22-cv-07831 (NGG) (PK)

------------------------------------------------------- x
TAMARA FIELDS, *et al.*,

       Plaintiffs,

       v.

LAFARGE S.A., *et al.*,

       Defendants.

23-cv-00169 (NGG) (PK)

------------------------------------------------------- x
DIANE FOLEY, *et al.*,

       Plaintiffs,

       v.

LAFARGE S.A., *et al.*,

       Defendants.

23-cv-05691 (NGG) (PK)

------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY THE
<u>AUGUST 29, 2025 ORDER FOR INTERLOCUTORY APPEAL</u>**

                         Jay K. Musoff
                         John Piskora
                         Chloe Gordils
                         **LOEB & LOEB LLP**
                         345 Park Avenue
                         New York, NY 10154
                         Telephone:    212-407-4212
                         Facsimile:    212-407-4990

                         *Attorneys for Lafarge S.A.,
                         Lafarge Cement Holding Limited, and
                         Lafarge Cement Syria S.A.*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW. | 2 |
| II. | THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE CONTROLLING QUESTIONS OF LAW. | 4 |
| | A. There Is Substantial Ground for Difference of Opinion on the *Fuld* Question. | 4 |
| | B. There Is Substantial Ground for Difference of Opinion on the Conspiracy Standard Question. | 7 |
| III. | AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION. | 8 |
| IV. | THE COURT SHOULD EXERCISE ITS DISCRETION TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL. | 9 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*In re A2P SMS Antitrust Litigation*,
    No. 12-CV-2656 (AJN), 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ................................2

*Allstate Insurance Co. v. Elzanaty*,
    No. 11-CV-3862 (ADS) (ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013) ..................8

*Batalla Vidal v. Nielsen*,
    Nos. 16-CV-4756 (NGG) (JO), 17-CV-5228 (NGG) (JO), 2018 WL 10127043
    (E.D.N.Y. Apr. 30, 2018) ...............................................................................................2, 5, 6

*Caplan v. Dollinger*,
    No. 24-CV-7996, 2025 WL 1808530 (S.D.N.Y. June 30, 2025) ....................................5, 7

*DeSimone v. Select Portfolio Servicing, Inc.*,
    No. 20-CV-3837 (PKC) (TAM), 2025 WL 1548816 (E.D.N.Y. May 30, 2025) .................3

*EEOC v. Maggies Paratransit Corp.*,
    351 F. Supp. 2d 51 (E.D.N.Y. 2005) .................................................................................3

*In re Fairfield Sentry Ltd.*,
    671 B.R. 404 (Bankr. S.D.N.Y. 2025) ...............................................................................7

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023) ....................................................................................1, 7, 8, 9

*Fuld v. Palestine Liberation Organization*,
    606 U.S. 1 (2025) .......................................................................................................1, 4, 5

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
    147 F.4th 226 (2d Cir. 2025) .............................................................................................6

*Orient Plus International Ltd. v. Baosheng Media Group Holdings Ltd.*,
    No. 1:24-cv-00744 (JLR), 2025 WL 2613530 (S.D.N.Y. Sept. 10, 2025) .....................5, 7

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) ..............................................................................................6

*Republic of Colombia v. Diageo North America Inc.*,
    619 F. Supp. 2d 7 (E.D.N.Y. 2007) ................................................................................6, 9

*SEC v. Coinbase, Inc.*,
    761 F. Supp. 3d 702 (S.D.N.Y. 2025) ............................................................................2, 7

*Twitter, Inc. v. Taamneh*,
 598 U.S. 471 (2023)..........................................................................................................8

*United States v. Khalupsky*,
 5 F.4th 279 (2d Cir. 2021)........................................................................................1, 8, 9

**STATUTES**

18 U.S.C. § 2334..................................................................................................................4

28 U.S.C. § 1292.............................................................................................................2, 4

Defendants Lafarge S.A., Lafarge Cement Holding Limited, and Lafarge Cement Syria S.A. respectfully submit this reply memorandum of law in support of their motion to certify the Court's August 29, 2025 Memorandum & Order (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1]

**PRELIMINARY STATEMENT**

In the alternative to reconsideration, Defendants' Motion established that the Court should certify the Order for immediate appeal under 28 U.S.C. § 1292(b) based on two controlling questions of law:

- Whether *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), supports the exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) whenever the plaintiff's claims "implicate[] important foreign policy and national security concerns," thereby overruling longstanding Second Circuit precedent requiring an assessment of the defendant's contacts with the United States (the "*Fuld* Question"); and

- Whether courts in the Second Circuit should apply the "common pursuit" standard set forth in *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023), or the "not at cross-purposes" framework set forth in *United States v. Khalupsky*, 5 F.4th 279 (2d Cir. 2021), when assessing whether a plaintiff has plausibly alleged a shared co-conspiratorial purpose when asserting an ATA conspiracy claim (the "Conspiracy Standard Question").

Resolution of either issue in Defendants' favor would terminate these three actions, along with five other related cases. Even an affirmance would provide critical guidance to district courts within this Circuit.

Plaintiffs' response boils down to contending that the Order decided these two questions correctly. Such arguments, however, are better addressed to the Second Circuit on interlocutory appeal. Of course, arguments about whether the Court was right or wrong do not diminish the

---

[1] Defined terms have the same meaning as specified in Defendants' memorandum in support of their Motion to Certify the August 29, 2025 Order for Interlocutory Appeal (the "Motion").

importance of these questions, the scope for substantial ground for difference of opinion on either question, or the other statutory criteria, all of which favor Defendants here. Accordingly, unless varied upon reconsideration, the Court should certify the Order for interlocutory appeal.

## ARGUMENT

**I.     THE ORDER INVOLVES CONTROLLING QUESTIONS OF LAW.**

As explained in the Motion, both the *Fuld* Question and the Conspiracy Standard Question are "controlling question[s] of law," 28 U.S.C. § 1292(b), because the Second Circuit "could decide [them] quickly and cleanly without having to study the record," *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 713 (S.D.N.Y. 2025), and their resolution in Defendants' favor would terminate these three cases (and five related actions). (Mot. at 5–6.)

Plaintiffs' response concedes that the *Fuld* Question is a question of law but suggests that it is not "controlling" because "New York's long-arm statute supplies an alternative basis for personal jurisdiction." (Opp'n at 7.) After exhaustively considering the issues, however, the Court definitively rejected all but one of Plaintiffs' bases for predicating personal jurisdiction on the long-arm statute. (Order at 24–33.) It then expressed significant doubt about the viability of the lone remaining ground, "hesitat[ing] to conclude" that the "exercise of personal jurisdiction" over Defendants on that basis would comport with the long-arm statute. (Order at 24–33.) In the event that the Second Circuit even felt the need to remand these actions, that the Court would "likely," even if not "certainly," dismiss the cases for lack of personal jurisdiction is enough to conclude that the *Fuld* Question is controlling. *Batalla Vidal v. Nielsen*, Nos. 16-CV-4756 (NGG) (JO), 17-CV-5228 (NGG) (JO), 2018 WL 10127043, at *1 (E.D.N.Y. Apr. 30, 2018) (Garaufis, J.); *see also*, *e.g.*, *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2015 WL 876456, at *3 (S.D.N.Y.

2

Mar. 2, 2015) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.").

As for the Conspiracy Standard Question, Plaintiffs' response first asserts, without elaboration, that it is not "controlling." (Opp'n at 8.) But since the conspiracy claims are the only ones that remain in these actions, it follows that resolution of that issue in Defendants' favor would terminate these cases. In any event, the question whether a claim should survive dismissal is controlling even if not dispositive of the whole case. *See, e.g.*, *EEOC v. Maggies Paratransit Corp.*, 351 F. Supp. 2d 51, 53 (E.D.N.Y. 2005) (Garaufis, J.) ("[T]he term controlling question . . . can include not only those issues that will resolve the action in its entirety, but those that are dispositive in other respects, such as whether a particular claim exists.").

Plaintiffs' response next asserts that the Conspiracy Standard Question requires a "fact-sensitive application" of the controlling standard and "does not generate a pure question of law." (Opp'n at 9.) But, as further explained below, this misreads the issues at play. If the Second Circuit agrees that *Freeman*'s "common pursuit" standard applies to Plaintiffs' conspiracy claims, it will reverse without needing to study the record because Plaintiffs concede (and the Court concluded) that Defendants and the FTOs pursued different ends. (Order at 48 (distinguishing Defendants' "interest in maintaining their cement operations in Syria and excluding competitors from the local market" from "ISIS's purpose of building and maintaining a geographic stronghold . . . from which it could plan terrorist attacks on Americans across the world.").) In any event, even questions that require an examination of "many facts upon which [they are] based" can qualify as controlling questions of law. *DeSimone v. Select Portfolio Servicing, Inc.*, No. 20-CV-3837 (PKC) (TAM), 2025 WL 1548816, at *5 (E.D.N.Y. May 30, 2025).

3

## II. THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ON THE CONTROLLING QUESTIONS OF LAW.

Both the *Fuld* Question and the Conspiracy Standard Question likewise generate "substantial ground for difference of opinion," 28 U.S.C. § 1292(b). (Mot. at 6–13.) Plaintiffs' arguments to the contrary are unpersuasive.

### A. There Is Substantial Ground for Difference of Opinion on the *Fuld* Question.

Defendants have previously explained why the Supreme Court's analysis of an idiosyncratic and narrowly drawn statute in *Fuld* (the PSJVTA of 2019) does not support the Court's assertion of personal jurisdiction over Defendants in this case—or, at a minimum, that the novelty, complexity, and far-reaching ramifications of the issue justify finding substantial ground for difference of opinion. (Mot. at 7–12.) Plaintiffs' response hardly even addresses the unique statute at play in *Fuld*, and their attempted reliance on recent district court cases is misplaced.

Plaintiffs first suggest that the PSJVTA provides for personal jurisdiction over Defendants because Defendants "made similar payments" to those that can trigger jurisdiction under the PSJVTA. (Opp'n at 12.) But Plaintiffs conspicuously ignore that the jurisdictional predicates in the PSJVTA ***apply exclusively to acts taken by the PA and the PLO***, not anyone else (and not Defendants). *See* 18 U.S.C. § 2334(e)(5). The Supreme Court stressed the narrow compass of this 2019 special statute. *See Fuld*, 606 U.S. at 21 (emphasizing that the PSJVTA "ties jurisdiction to specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in ***respondents'*** [*i.e.*, the PA's and the PLO's] relationships with the United States" (emphasis added)). The Court upheld the constitutionality of the PSJVTA in large part because it "represents but one targeted aspect of a multifaceted foreign policy toward these two *sui generis* foreign entities, both of which exercise governmental functions in a geopolitically sensitive region and have decades of 'meaningful contacts, ties, [and] relations' with the United States." *Id.* at 22

(alteration in original). It did not announce a general rule for any ATA defendant not covered by the PSJVTA.

Doubling down, Plaintiffs contend that the PSJVTA's express targeting of the PA and PLO makes "no real difference." (Opp'n at 12.) Yet the Supreme Court's rationale for its holding compels the contrary conclusion. Indeed, the Supreme Court concluded that the "supposed underinclusiveness" of the PSJVTA—that it applies only to the PA and the PLO—actually supported the statute's constitutionality. (*Id.*) "Rather than subject to jurisdiction in its courts a broader range of potential defendants—each of which presumably would implicate distinct foreign affairs concerns—the Federal Government took a narrower tack." (*Id.*) Defendants respectfully submit that this Court's novel extension of *Fuld* to materially different defendants (private companies lacking any indicia of the PA's and the PLO's long-standing relationships with the Untied States) in a materially different context (Rule 4(k)(2) as opposed to Rule 4(k)(1)(C)) presents the sort of "difficult" question "of first impression" that warrants interlocutory appellate review. *See Batalla Vidal*, 2018 WL 10127043, at *2.

Plaintiffs next assert that "two courts in this Circuit have already recognized that *Fuld* 'abrogated' and 'extinguished' Second Circuit precedent." (Opp'n at 13.) These cases do not support this proposition. At most, these cases recognized (unremarkably) that, while pre-*Fuld* Second Circuit cases held the Fifth Amendment Due Process Clause to be coterminous with the Fourteenth Amendment Due Process Clause for all purposes in all cases, this has now been overruled. *Caplan v. Dollinger*, No. 24-CV-7996 (JMF), 2025 WL 1808530, at *6 (S.D.N.Y. June 30, 2025) (noting that *Fuld* "abrogated" Second Circuit decisions concluding "that the Fifth [Amendment] Due Process Clause is coextensive with the Fourteenth Amendment's Due Process Clause"); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-cv-00744 (JLR),

5

2025 WL 2613530, at *10–11 (S.D.N.Y. Sept. 10, 2025) (observing that *Fuld* "extinguished" Second Circuit precedent finding that "the Fifth Amendment analysis was 'basically the same'" as that under the Fourteenth Amendment). But this does not actually bear upon the issue presented in this case. And, apart from the Order, no case in this Circuit has held that *Fuld* overruled Second Circuit precedent requiring that a defendant have "sufficient affiliating contacts with the United States in general" to sustain personal jurisdiction under Rule 4(k)(2). *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). That includes *Lelchook v. Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226 (2d Cir. 2025), in which the court concluded that the minimum-contacts test supported the assertion of personal jurisdiction before considering the plaintiffs' "reasonable interests in pursuing effective relief" as part of the separate inquiry into whether the exercise of jurisdiction "comport[ed] with fair play and substantial justice." *Id.* at 245–46; (*see also* Opp'n at 10–11.).

The *Fuld* Question thus plainly gives rise to substantial ground for difference of opinion. This is a "difficult" and novel issue arising from the implications of the Supreme Court's recent abrupt departure from long-standing precedent holding that the Due Process Clauses of the Fifth and Fourteenth Amendments are coextensive in all cases, as well as the parsing and resolution of congressional intent in sensitive matters involving foreign policy and national security. *See, e.g.*, *Batalla Vidal*, 2018 WL 10127043, at *2; *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (Garaufis, J.). As Plaintiffs concede through their silence, moreover, the *Fuld* Question carries momentous stakes. If the Court's application of *Fuld* is adopted throughout this Circuit, it will authorize the assertion of personal jurisdiction over every defendant in every ATA case—and indeed in any other action involving federal law claims that

6

"implicate important foreign policy and national security concerns." (Order at 36–37; *see generally* Mot. at 7–12.)

As Plaintiffs' authorities illustrate, certification is warranted for an additional reason in light of the emerging "conflicting authority on the issue," *Coinbase*, 761 F. Supp. 3d at 716. This Court held that *Fuld* applies to Rule 4(k)(2) and displaces the long-standing minimum contacts analysis. (Order at 36–37.) The court in *Caplan* reached the opposite conclusion: It acknowledged *Fuld* and applied the "minimum contacts analysis" when assessing whether personal jurisdiction comported with the Fifth Amendment and looked at the defendants' "contacts . . . with the United States as a whole." 2025 WL 1808530, at *6. And the court in *Orient* adopted a middle ground, ruling that "*Fuld* has broadened the due process inquiry" under the Fifth Amendment but declining to fashion a standard pending further briefing. 2025 WL 2613530, at *11. Other courts have followed suit. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 671 B.R. 404, 418 (Bankr. S.D.N.Y. 2025) (recognizing the need for further consideration of "the effect of the Supreme Court's ruling in *Fuld* in cases that do not involve a specific statutory conferral of personal jurisdiction"). The Second Circuit's prompt consideration of the *Fuld* Question would bring salutary clarity to courts and litigants within this Circuit on a threshold jurisdictional issue.

### B. There Is Substantial Ground for Difference of Opinion on the Conspiracy Standard Question.

The Conspiracy Standard Question likewise presents substantial ground for difference of opinion in light of its novelty, of a conflict between two recent Second Circuit decisions, and of the attendant consequences for ATA claims throughout this Circuit. (*See* Mot. at 12–13.) Plaintiffs' response insists that the standards in *Freeman* and *Khalupsky* are "the same." (Opp'n at 14.) Not so. In *Freeman*, the Second Circuit required proof that co-conspirators were "pursuing the same object" and "shared . . . 'common intent'" to sustain an ATA conspiracy claim. 57 F.4th at 79–80.

7

The standard in *Khalupsky* is far more permissive, finding the necessary agreement and intent "so long as [co-conspirators'] goals are not at cross-purposes" even if they were "not . . . congruent." 5 F.4th at 289. So *Freeman* requires pursuit of the "same object," while *Khalupsky* disclaims the need to prove "congruent" "goals." The standards are plainly contradictory. In *Freeman*, the co-conspirators' goals were "not at cross-purposes"—and therefore sufficient to plead a conspiracy under *Khalupsky*—yet the Second Circuit still found them wanting and rejected the ATA conspiracy claim. 57 F.4th at 79–80. And the Supreme Court has weighed in firmly on the side of a stricter standard in ATA cases, emphasizing that the element of an "agreement with the primary wrongdoer to commit wrongful acts" is a "significant limiting principle" for conspiracy claims. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023).

### III. AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION.

The parties agree that "the question of whether there is a controlling issue of law" is "closely connected" to "the question of whether certification would materially advance the ultimate termination of the litigation." *Allstate Ins. Co. v. Elzanaty*, No. 11-CV-3862 (ADS) (ARL), 2013 WL 2154759, at *4 (E.D.N.Y. May 16, 2013); (*see also* Mot. at 14; Opp'n at 16.). Most of Plaintiffs' arguments on this score thus fail for the same reasons as their position that the *Fuld* Question and Conspiracy Standard Question are not controlling questions of law. *See* supra pp. 4–8. This includes Plaintiffs' claim that "[r]eversal on the Conspiracy Standard Question . . . would not advance the litigation" because the Complaints "plead[] what *Freeman* requires." (Opp'n at 16.) In reality, the Court's decision to apply the looser *Khalupsky* standard was dispositive. As the Court explained, the Complaints allege that Defendants "were motivated by an interest in maintaining their cement operations in Syria and excluding competitors from the local market," whereas ISIS's "purpose" was "building and maintaining a geographic stronghold . . .

from which it could plan terrorist attacks on Americans across the world." (Order at 48.) While those goals might not have been at "cross-purposes," *Khalupsky*, 5 F.4th at 289, they certainly were not "the same object" and did not reflect "shared . . . common intent," *Freeman*, 57 F.4th at 79–80. Accordingly, application of the *Freeman* standard would compel dismissal of the conspiracy claims.

That leaves the speculative suggestion, urged in Plaintiffs' response, that "the Second Circuit also would review the Court's dismissal of the aiding-and-abetting claim" on any interlocutory appeal and reverse that ruling, thereby "leaving the case to continue much as before." (Opp'n at 17–18.) Of course, the response offers no support for its unadorned assertion that the Second Circuit "would" review a question of which no party has sought certification, much less why that hypothetical review would lead to reinstatement of the aiding-and-abetting claims that this Court properly dismissed. Nor would this remote possibility come into play if the Second Circuit reversed on the *Fuld* Question, thereby terminating this entire action.

At bottom, "[i]f Defendants were to prevail" on either the *Fuld* Question or the Conspiracy Question, "the action would be dismissed in whole . . . , thus . . . significantly reducing the costs of discovery." *Diageo*, 619 F. Supp. 2d at 11. "[P]ermitting an interlocutory appeal" in this "'big' case" "will expedite this litigation." *Id.*

### IV. THE COURT SHOULD EXERCISE ITS DISCRETION TO CERTIFY THE ORDER FOR IMMEDIATE APPEAL.

Finally, the Court should "exercise its discretion to permit an immediate appeal" for the reasons detailed above and in the Motion. *See Diageo*, 619 F. Supp. 2d at 11; (Mot. at 14–15.). Plaintiffs' response asserts that an interlocutory appeal would cause "delay" and prejudice their discovery efforts. As elsewhere recognized in their brief, however, the parties have agreed on a discovery plan and corresponding schedule. This Motion does not seek any modification of the

schedule. Discovery will continue according to the agreed-on deadlines unless and until this Court or the Second Circuit says otherwise.

Plaintiffs' response also urges this Court not to "shortcut" the "ordinary appellate procedure" of allowing district courts to "evaluate the impact of *Fuld* on ATA and other cases." (Opp'n at 18–19.) For one thing, this position is based on the faulty premise that there is no "conflicting authority" on the question. (*Id.*) As explained above, *see* supra pp. 4–7, courts in this Circuit have reached divergent outcomes in their application of *Fuld*. For another, Plaintiffs' central assumption—that a court should not certify an interlocutory appeal unless an unspecified number of other courts have considered the same issues—is a fallacy because novel questions of first impression are frequently certified. (*See* Mot. at 11.)

## CONCLUSION

For the foregoing reasons and those stated in the Motion, Defendants respectfully request that the Court grant their motion to certify the Court's August 29, 2025 Order for interlocutory appeal.

Dated: New York, New York
October 3, 2025

  /s/ Jay K. Musoff
Jay K. Musoff
John Piskora
Chloe Gordils
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone: 212-407-4212
Facsimile: 212-407-4990

*Attorneys for Lafarge S.A.,
Lafarge Cement Holding Limited, and
Lafarge Cement Syria S.A.*